**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**FT. MYERS DIVISION**

| | | |
|---|---|---|
| **EVERGREEN MEDIA HOLDINGS, LLC and TONY DEROSA-GRUND** | § | |
| | § | **CIVIL ACTION NO.** |
| **VS.** | § | |
| | § | **JURY TRIAL DEMANDED** |
| **PAUL ROCK PRODUCED, LLC and PAULE ROCKFERRY a/k/a PAUL ROCK** | § | |

Plaintiffs, EVERGREEN MEDIA HOLDINGS, LLC and TONY DEROSA-GRUND, file this complaint against Defendants, PAUL ROCK PRODUCED, LLC, and PAULE ROCKFERRY a/k/a PAUL ROCK, as follows:

**Introduction**

1. This action is brought by Evergreen Media Holdings, LLC ("Evergreen") and Tony DeRosa-Grund ("Mr. DeRosa-Grund")(collectively, "Plaintiffs") against PAUL ROCK PRODUCED, LLC ("PRP) and PAULE ROCKFERRY a/k/a PAUL ROCK (collectively, "Defendants"), for breach of contract, breach of the implied covenant of good faith and fair dealing, declaratory relief and defamation.

2. Mr. DeRosa-Grund is a successful motion picture producer and writer. Plaintiffs own the rights to the motion picture projects entitled "Untitled Amityville Prequel," "The Demonist," and "The Demonologist." In or around November 1, 2013, Plaintiffs entered into an agreement with Defendants, pursuant to which Defendants acquired an option on the rights for "The Demonologist" and Mr. DeRosa-Grund agreed to produce the picture and provide writing services on the picture (the "Demonologist Agreement"). *See* Exhibit A. The Demonologist Agreement also called for, as part of the consideration to be tendered by Defendants to Plaintiffs,

payment for the aforementioned writing and producing services. As part of Plaintiffs' writing compensation, Plaintiffs are entitled to receive from Defendants, among other things, the equivalent of Writer's Guild of America ("WGA") guild minimum, and payments based on WGA delivery terms, for writing services on "The Demonologist" based on the WGA's high budget film writing services pay scale attached hereto as Exhibit B. Accordingly, Plaintiffs are entitled to receive at least $124,190.00 for writing services on "The Demonologist". The WGA terms and Schedule of Minimums specify that all payments are to be made "upon delivery" of a script. Although neither the Plaintiffs nor the Defendants were signatories to the WGA at the time they entered into the Demonologist Agreement, they referenced the WGA payment schedule in the Demonologist Agreement in order to provide a standard and definitive payment schedule and timetable of payments due for the writing services. Plaintiffs do not allege that the WGA controls, or otherwise has any oversight over, the Demonologist Agreement..

3. On or about December 2013, Plaintiffs completed and delivered the script for "The Demonologist" to Defendants, thereby completing the writing services pursuant the Demonologist Agreement. To date, Defendants have only made a partial payment of $15,000.00 for said writing services, which Defendants purported at the time was a payment made in "good faith". Said partial payment was made by Defendants on November 25, 2013 and is labeled as "good faith" payment for writing services and attached hereto as Exhibit C. Defendants mailed the check to Plaintiffs. Plaintiffs have apprised Defendants that they still owe, as per the WGA schedule of minimums and the Demonologist Agreement, $109,190.00 to Plaintiffs and that the non-payment of such monies was a material breach of the Demonologist Agreement. To date, Defendants have not paid said delinquent amount.

4. After Defendants defaulted on their obligations under the Demonologist Agreement, they began sending defamatory emails to Mr. DeRosa-Grund copying third-parties.

5. Defendants have breached the Demonologist Agreement and the implied covenant of good faith and fair dealing related to the Demonologist Agreement by failing to pay Plaintiffs the agreed upon writing fees despite the fact that Plaintiffs have satisfied all of their obligations pursuant to the Demonologist Agreement and have delivered to Defendants the script for "The Demonologist."

6. This is a suit for breach of contract, breach of the implied covenant of good faith and fair dealing, declaratory relief and defamation.

**Parties**

7. Plaintiff Tony DeRosa-Grund ("Mr. DeRosa-Grund") is a citizen of the United States of America, and is a resident of the State of Texas.

8. Plaintiff Evergreen Media Holdings, LLC ("Evergreen") is a Texas limited liability company.

9. Defendant Paul Rock Produced, LLC ("PRP") is, upon information and belief, a Florida limited liability company with a principal address of 2780 E. Fowler Ave., Suite 241, Tampa, Florida 33612. See the record of the Florida Department of State, Division of Corporations, attached as Exhibit D.

10. Defendant Paule Rockferry a/k/a Paul Rock ("Mr. Rock") is, upon information and belief, a resident of the State of Florida. See the sworn declaration of Mr. Rock in which he avers that he is a resident of the State of Florida, attached as Exhibit E. Mr. Rock is the Managing Member of PRP as well as identified with the State of Florida as the Registered Agent for PRP with an address of 2780 E Fowler Ave., Suite 241, Tampa, Florida 33612.

11. Mr. Rock also conducts business in the State of Florida using the fictitious name "Paul Rock Produced." On or about November 8, 2013, the fictitious name "Paul Rock Produced" was registered with the State of Florida. The application and registration show that Mr. Rock is the "Owner" of the fictitious name "Paul Rock Produced" and provides Mr. Rock's address as 2780 E Fowler Ave., Suite 241, Tampa, Florida 33612. See a copy of the fictitious name application and registration, attached as Exhibit F.

**Venue and Jurisdiction**

12. Venue is proper in the Middle District of Florida pursuant to 28 U.S.C. § 1391(b)(1) because Defendants are residents of the State of Florida within the Middle District of Florida.

13. The Court has federal diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332(a).

**Alter Ego/Personal Liability**

14. Mr. Rock is the Managing Member of PRP. At the time Plaintiffs entered into their agreement with PRP, PRP was not yet formed as an entity. Mr. Rock did not form PRP until November 13, 2013 (after Mr. Rock executed the agreement with Plaintiffs on behalf of PRP), and the entity did not become "effective" until January 1, 2014.

15. Mr. Rock organized PRP as a mere tool or business conduit, and used it as a means of perpetrating a fraud on Plaintiffs. There is such unity between PRP and Mr. Rock that holding only PRP liable for its acts and omissions would result in injustice. As such, PRP is Mr. Rock's alter ego, and Mr. Rock is individually liable for PRP's acts and omissions.

16. Upon information and belief, Mr. Rock interchangeably uses himself, personally, PRP and the fictitious name "Paul Rock Produced" to refer to his business activities such that

Mr. Rock is personally liable for the acts complained of herein. By way of example, Mr. Rock issued a check to Plaintiffs which used only his personal name. See a copy of the aforementioned check attached as Exhibit G. On another occasion, Mr. Rock issued a check to Plaintiffs using only the fictitious name "Paul Rock Produced". See a copy of the aforementioned check attached hereto as Exhibit H. As such both PRP and the fictitious name "Paul Rock Produced" are all alter egos of Mr. Rock and he is individually liable for the actions and omissions thereof.

## **Facts**

17. Unless otherwise indicated, all allegations herein are made on information and belief.

18. Plaintiffs entered into the deal memo on "The Demonologist" with Defendants on or around November 1, 2013, i.e., the Demonologist Agreement. Pursuant to the Demonologist Agreement, Evergreen agreed to give Defendants an option to obtain rights to produce the picture based upon Plaintiffs' original written script for "The Demonologist."

19. Pursuant to the Demonologist Agreement, Defendants are obligated to pay Plaintiffs, among other things, WGA guild minimum for Plaintiffs' writing services on the picture. Plaintiffs completed all writing services pursuant to the Demonologist Agreement and delivered the script to Defendants in December of 2013, thereby obligating Defendants to pay Plaintiffs at least $124,000.00 for Plaintiffs' writing services.

20. Despite Plaintiffs' repeated requests that Defendants pay Plaintiffs the outstanding balance of $109,140.00 for the writing services and delivery of script, Defendants have failed to do so. Thus, in as much as Defendants have materially breached the Demonologist Agreement all of Defendants' rights pursuant to the Demonologist Agreement are terminated.

Defendants have breached the Demonologist Agreement and the implied covenant of good faith and fair dealing by failing to pay for Plaintiffs' writing services, and by failing to act in good faith to secure financing for the picture.

21. After Defendants defaulted on their obligations under the Demonologist Agreement, they began sending defamatory emails to Mr. DeRosa-Grund, and making various threats. For example, on or about January 8, 2014, Mr. Rock falsely accused Mr. DeRosa-Grund via email of being a "low class criminal" and "bankrupt." Mr. Rock included third-parties on his email, including his wife and the President of FilmEngine Entertainment, LLC..

## COUNT I

### (Breach of Contract)

22. Plaintiffs incorporate herein by reference the factual allegations contained in the preceding paragraphs as if fully set forth herein.

23. On or around November 1, 2013, Plaintiffs and Defendants entered into the Demonologist Agreement under which Defendants agreed to pay Plaintiffs the equivalent of the WGA guild minimum of $124,190.00 for writing services performed in connection with "The Demonologist." To date, Plaintiffs are still owed $109,140.00 by Defendants for said services.

24. Defendants failed to pay Plaintiffs for these writing services and have thus breached the Demonologist Agreement. By failing to pay Plaintiffs for their services, Defendants have forfeited any and all rights under the Demonologist Agreement.

25. Plaintiffs have performed all of their obligations under the Demonologist Agreement except for those excused or waived by Defendants or by operation of law. All conditions for Defendants' performance had occurred.

26. As a direct and proximate result of Defendants' conduct, Plaintiffs have suffered, and will continue to suffer, damages in an amount to be determined at trial, but which exceeds the minimum jurisdictional amount of this Court.

## COUNT II

### (Breach of the Implied Covenant of Good Faith and Fair Dealing)

27. Plaintiffs incorporate herein by reference the factual allegations contained in the preceding paragraphs as if fully set forth herein.

28. In every contract there is an implied covenant of good faith and fair dealing that neither party will do anything that will injure the right of the other to receive the benefits of the parties' agreement.

29. As discussed above, Plaintiffs contend that Defendants, by engaging in the above-referenced conduct, including, but not limited to, failing to pay Plaintiffs for writing services performed and delivery of "The Demonologist" script, and failing to act in good faith to secure financing for the picture (which, under the Demonologist Agreement, Defendants were solely and exclusively responsible for), breached the implied covenant of good faith and fair dealing.

30. As a direct and proximate result of Defendants' breaches of the implied covenant of good faith and fair dealing, Plaintiffs have been damaged in an amount to be proven at trial, but which exceeds the minimum jurisdictional amount of this Court.

## COUNT III

### (Declaratory Relief)

31. Plaintiffs incorporate herein by reference the factual allegations contained in the preceding paragraphs as if fully set forth herein.

32. An actual and justiciable controversy has arisen and now exists between Plaintiffs and Defendants concerning their respective rights and duties, in that Plaintiffs contend that because Defendants failed to pay Plaintiffs for writing services and to act in good faith to secure financing for a motion picture, Defendants have no rights under the Demonologist Agreement. Accordingly, Plaintiffs contend that writing services fees are immediately due to Plaintiffs and that Defendants have no rights under the Demonologist Agreement going forward. Defendants dispute this contention and contend otherwise.

33. Accordingly, pursuant to 28 U.S.C. § 2201, Plaintiffs are entitled to a declaratory judgment that: (i) writing services fees are immediately due to Plaintiffs; (ii) because Defendants failed to pay Plaintiffs for writing services and to act in good faith to secure financing for a motion picture, Defendants have no rights under the Demonologist Agreement; and (iii) Defendants have no rights in any motion picture related to "The Demonologist".

## COUNT IV

### (Defamation/Libel Per Se)

34. Plaintiffs incorporate herein by reference the factual allegations contained in the preceding paragraphs as if fully set forth herein.

35. Defendants' statements were defamatory and false.

36. Defendants are strictly liable for their defamatory statements.

37. Defendants acted with actual malice.

38. Accordingly, Plaintiffs seek an award of exemplary damages.

39. Mr. DeRosa-Grund has suffered injury as a result of Defendants' defamatory statements, and injury can also be presumed.

**Conditions Precedent**

40. All conditions precedent necessary to maintain this suit have been performed, have been waived, or have occurred.

**Jury Demand**

41. Plaintiffs hereby demand a trial by jury.

**Prayer for Relief**

**WHEREFORE**, Plaintiffs, EVERGREEN MEDIA GROUP, LLC and TONY DEROSA-GRUND, pray that Defendants PAUL ROCK PRODUCED, LLC and PAULE ROCKFERRY a/k/a PAUL ROCK, be cited to appear, and that upon final trial, they be awarded the following from PAUL ROCK PRODUCED, LLC and PAULE ROCKFERRY a/k/a PAUL ROCK, jointly and severally:

(a) Actual Damages;

(b) A declaration that: (i) writing services fees are immediately due to Plaintiffs; (ii) because Defendants failed to pay Plaintiffs for writing services and to act in good faith to secure financing for a motion picture, Defendants have no rights under the Demonologist Agreement; and (iii) Defendants have no rights in any motion picture related to "The Demonologist".

(c) Exemplary damages;

(d) Reasonable and necessary attorneys' fees, including those fees which are equitable and just;

(e) Prejudgment and post judgment interest at the maximum rate as allowed by law;

(f) Costs of court; and

(g) Such other and further relief to which Plaintiffs may be justly entitled.

Dated: August 26, 2014

Respectfully submitted,

**ARRASTIA, CAPOTE & PHANG, LLP**

By: /s/ John Arrastia, Jr.

John Arrastia, Jr.
Florida Bar No.: 0072461
Brickell Bayview Centre
80 S.W. 8th Street, Suite 2310
Miami, Florida 33130
Tel: (786) 871-5680
Fax: (786) 866-6358
john@acplegal.com

Charles W. Grimes (Admission pending)
Florida Bar No. 0096651
GRIMES LLC
15139 Brolio Lane
Naples, Florida 34110
Tel: 203-849-8300
Fax: 203-849-9300
Email: grimes@gandb.com

Michael R. Patrick (to be admitted pro hac vice)
GRIMES LLC
488 Main Avenue
Norwalk, Connecticut 06851
Tel: 203-849-8300
Fax: 203-849-9300
Email: patrick@gandb.com

ATTORNEYS FOR EVERGREEN
MEDIA HOLDINGS, LLC AND TONY DEROSA-GRUND